# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

January 22, 2025

Mr. Philip Devlin
Western District of Texas, Pecos
United States District Court
410 S. Cedar Street
U. S. Post Office & Courthouse
Room 203
Pecos, TX 79772-0000

     No. 22-51019    USA v. Perez-Gallan
              USDC No. 4:22-CR-427-1

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By: _____
                    Casey A. Sullivan, Deputy Clerk
                    504-310-7642

cc:
     Ms. Stephanie Frederique Cagniart
     Mr. Charles E. Fowler Jr.
     Mr. Joseph H. Gay Jr.
     Mrs. Ashley Chapman Hoff
     Mr. Shane O'Neal

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2024

Lyle W. Cayce
Clerk

No. 22-51019

UNITED STATES OF AMERICA,

*Plaintiff—Appellant,*

*versus*

LITSSON ANTONIO PEREZ-GALLAN,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-427-1

ON REMAND FROM THE UNITED STATES
SUPREME COURT

Before SMITH, STEWART, and DUNCAN, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

This is Litsson Perez-Gallan's facial challenge to 18 U.S.C. § 922(g)-(8)(C)(ii),[1] which prohibits gun possession by persons subject to domestic-

---

[1] For readability, we sometimes truncate the statute's citation to, *e.g.*, (8)(C)(ii) or just (C)(ii).

No. 22-51019

violence restraining orders.  The district court granted Perez-Gallan's motion to dismiss the indictment, and a panel summarily affirmed.  At that time, this court was bound by *United States v. Rahimi*, 61 F.4th 443, 461 (5th Cir. 2023) ("*Rahimi 2023*"), which held that § 922(g)(8) in its entirety is facially unconstitutional.  The Supreme Court reversed, holding that § 922(g)(8)-(C)(i) is not facially invalid; the Court did not reach the constitutionality of (C)(ii).  *United States v. Rahimi*, 602 U.S. 680, 693 (2024) ("*Rahimi 2024*").  The Court then granted certiorari in this case, vacated, and remanded for reconsideration in light of *Rahimi 2024*.  *United States v. Perez-Gallan*, 144 S. Ct. 2707, 2708 (2024).

The dispute is whether, post-*Rahimi 2024*, § 922(g)(8)(C)(ii) facially violates the Second Amendment.  It does not.  Because there are at least some circumstances in which the government could constitutionally apply (C)(ii) to a defendant's conduct, we reverse and hold that (C)(ii) is not facially unconstitutional.  We reverse and remand for the district court, in the first instance, to address Perez-Gallan's as-applied challenge to (C)(ii).

## I.
### A.

In June 2022, Perez-Gallan was driving an eighteen-wheeler at the Mexico-United States border in Presidio, Texas, when he entered a border patrol checkpoint and was directed to a secondary inspection area by border agents, who then asked him whether he was armed.  After Perez-Gallan said yes and consented to a search, the agents found a pistol in his backpack.  When the agents performed a weapons check, they discovered that the gun had been reported stolen and arrested Perez-Gallan on suspicion of possession of a stolen firearm.  After *Miranda* rights advisement and waiver, Perez-Gallan claimed that he did not know the gun was stolen because a friend had given it to him.  He also said that he carried the gun with him on drives for

No. 22-51019

self-protection.

The agents also found a Kentucky state court order in Perez-Gallan's wallet ("Court Order"), which outlined his conditions of release stemming from a May 2022 arrest for assault.[2]  The Court Order resulted from a May 2022 incident with his domestic partner, with whom Perez-Gallan shares a child.  His partner stated that Perez-Gallan had struck her in the face while she was holding their baby, and, after she put the baby down, he dragged her to the bathroom, struck her in the face again, and began hitting her in the ribs.  Perez-Gallan was charged with assault in the fourth degree.[3]

The Kentucky state district court released Perez on bond but issued an order imposing conditions of release.  That Court Order, which bore the signatures of the issuing judge and Perez-Gallan, expressly prohibited him from harassing, contacting, and "threatening to commit or committing acts of domestic violence or abuse against the alleged victim."  It also forbade him from possessing a gun.  Perez-Gallan's arrest in Texas occurred one month after the issuance of the Court Order.

## B.

Believing that the Court Order met the requirements of a protective

---

[2] The government later discovered a separate restraining order against Perez-Gallan from a Kentucky family court ("Restraining Order").  That resulted from a separate proceeding in which a state family court had found that Perez-Gallan posed "an immediate and present . . . danger of domestic violence and abuse" and issued an order "restrain[ing him] from committing further acts of abuse or threats of abuse, stalking or sexual assault."  As noted *infra* part I.B, because there is no evidence that Perez-Gallan had notice of that proceeding, the Restraining Order is not relevant here.  *See* § 922(g)(8)(A) (requiring actual notice).

[3] Perez-Gallan pleaded guilty to an amended-downward charge of disorderly conduct, second degree, in the Jefferson District Court.

No. 22-51019

order under § 922(g)(8), a grand jury indicted him under that statute.[4] Perez-Gallan moved to dismiss the indictment. After multiple continuances and supplemental briefing to address the effect of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the district court dismissed in a 32-page memorandum opinion.[5]

The district court first addressed whether § 922(g)(8) covers Perez-Gallan's alleged conduct at all. 640 F. Supp. 3d at 699–700. For (g)(8) to apply, the underlying court order (A) must have been "issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate"; (B) must restrain "such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C) . . . (ii) by its terms explicitly prohibit[] the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."[6] The district court noted that because the government acknowledged that it had no proof that Perez-Gallan had actual notice, the opportunity to participate, or was even

---

[4] The indictment alleged that Perez-Gallan, "knowing he was subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person . . . and by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner," knowingly possessed a firearm that "had been shipped and transported in interstate commerce and foreign commerce."

[5] *United States v. Perez-Gallan*, 640 F. Supp. 3d 697 (W.D. Tex. 2022), *aff'd*, No. 22-51019, 2023 WL 4932111 (5th Cir. Aug. 2, 2023) (per curiam) (unpublished), *cert. granted, judgment vacated*, 144 S. Ct. 2707 (2024).

[6] Section 922(g)(8)(C)(i) covers court orders that include "a finding that such person represents a credible threat to the physical safety of such intimate partner or child." This provision is not applicable here because the Court Order does not include an explicit credible threat determination.

No. 22-51019

present when the Restraining Order was issued, only the Court Order is relevant. *Id.* at 699.

The district court then noted that the Court Order prohibited him from "threatening to commit or committing acts of domestic violence or abuse against the alleged victim or other family or household member." *Id.* (quoting the Court Order). Applying Fifth Circuit precedent holding that "if the commonly understood definitions of terms in the protective order include acts involving 'physical force,' the protective order is sufficient to support a conviction under § 922(g)(8)," *United States v. McGinnis*, 956 F.3d 747, 760 (5th Cir. 2020), the district court found that Perez-Gallan's Court Order satisfied § 922(g)(8)'s required elements, *Perez-Gallan*, 640 F. Supp. 3d at 700.

But while the district court found that the Court Order satisfied § 922(g)(8)'s statutory requirements, the court ruled that (g)(8) violates the Second Amendment. Specifically, the court found that because "the historical record does not contain evidence sufficient to support the federal government's disarmament of domestic abusers, . . . . § 922(g)(8) does not overcome *Bruen*'s presumption that the Second Amendment protects an individual's possession of a firearm." *Id.* at 713. The court thus held (g)(8) facially unconstitutional and did not reach Perez-Gallan's as-applied challenge. *See id.* at 713 n.119.

The government appealed. While the appeal was pending, and before the government had submitted its brief, a panel of this court decided *Rahimi 2023*—which, like the district court order, also held that (g)(8) facially violates the Second Amendment. 61 F.4th at 461. The government conceded that *Rahimi 2023* was outcome-determinative for its appeal but filed a brief to preserve its arguments for further review.

A panel of this court summarily affirmed. *Perez-Gallan*, 2023 WL 4932111, at *1. Eleven months later, the Supreme Court reversed *Rahimi*

No. 22-51019

*2023*, *see Rahimi 2024*, 602 U.S. at 702, then granted certiorari, vacated, and remanded. *Perez-Gallan*, 144 S. Ct. at 2708. The Government and Perez-Gallan have since submitted additional letter briefs addressing the effect of *Rahimi 2024*. As with all constitutional questions, we consider the issue *de novo*. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003).

## II.

Perez-Gallan contends that *Rahimi 2023* controls this case under the rule of orderliness. We consider and reject that preliminary argument before deciding the merits of Perez-Gallan's facial challenge. *See United States v. Diaz*, 116 F.4th 458, 465 (5th Cir. 2024).

## A.

Last term, the Supreme Court held that § 922(g)(8)(C)(i) is not facially unconstitutional, reversing this court's *Rahimi 2023* decision. *See Rahimi 2024*, 602 U.S. at 702. But the decision "start[ed] and stop[ped] with Section 922(g)(8)(C)(i)" and expressly did not "decide whether regulation under Section 922(g)(8)(C)(ii) is also permissible." *Id.* at 693. So our first question is whether, under *Rahimi 2023*, (C)(ii) is facially invalid.[7]

It is "well-settled" in the Fifth Circuit that, "even if a panel's interpretation of the law appears flawed," "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such

---

[7] There is also the threshold question whether the rule of orderliness applies to any portion of *Rahimi 2023* at all, given that the Supreme Court reversed that decision. The rule of orderliness does apply. *See Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 856 n.2 (5th Cir. 2022). The rule of orderliness requires us to follow even a reversed panel opinion except for those portions of it that were reversed. *Id.*; *see also Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 n.57 (5th Cir. 2001) (concluding that circuit opinions in which the judgment was reversed on some but not all grounds are still precedential with respect to the portions not reversed).

No. 22-51019

as by a statutory amendment, or the Supreme Court, or our en banc court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (cleaned up). "This rule is strict and rigidly applied." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021).

For a Supreme Court decision to change our circuit's law, "neither a mere hint of how the Supreme Court might rule in the future nor a decision that is merely illuminating with respect to the case before us will permit a subsequent panel to depart from circuit precedent."[8] The intervening decision or decisions "must unequivocally overrule prior precedent." *Bonvillian*, 19 F.4th at 792 (internal quotations and citations omitted).

But the Court need not *expressly* overrule our precedent for a panel opinion to lose its precedential force. When an intervening Supreme Court decision represents a sufficiently clear break from this circuit's precedent, "a latter panel must simply determine that a former panel's decision has fallen unequivocally out of step with some intervening change in the law." *Id.* "One situation in which this may naturally occur is where an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis." *Id.* (internal quotation marks and alterations omitted).

*Rahimi 2023* itself provides an example. There, the panel held that *Bruen* "clearly 'fundamentally changed' our analysis of laws that implicate the Second Amendment, rendering our prior precedent" employing the pre-*Bruen* methodology "obsolete." *Rahimi 2023*, 61 F.4th at 450–51 (quoting *Bonvillian*, 19 F.4th at 792) (cleaned up). We recently reached a similar con-

---

[8] *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2561 (2024) (cleaned up) (citing *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013), and *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)).

No. 22-51019

clusion in *Diaz*, holding that because *Rahimi 2024* employed an analysis fundamentally different from that employed in an older case, the "law of orderliness mandates that we abandon that prior precedent." 116 F.4th at 465. In short, if we cannot adhere to our former precedent without disregarding intervening Supreme Court precedent, our circuit's precedent has been implicitly overruled.[9]

### B.

Perez-Gallan maintains that because *Rahimi 2023* found that § 922-(g)(8) is facially unconstitutional, and because *Rahimi 2024* reverses only on the ground that § 922(g)(8)(C)(i) is facially constitutional, *Rahimi 2023*'s holding that (g)(8) is facially void is still good law in this circuit as to (C)(ii). The government disagrees, asserting that because the Supreme Court rejects the analysis that the panel relied on in analyzing both (C)(i) and (ii), even the (C)(ii) analysis in *Rahimi 2023* is "unequivocally out of step" with *Rahimi 2024* and thus implicitly was overturned. *Bonvillian*, 19 F.4th at 792.

The government has the better of this dispute. To see why, it helps first to understand the statute's text and structure. A prosecution under § 922(g)(8) may proceed only if three criteria are met. *See Rahimi 2024*, 602 U.S. at 688. First, the defendant must have received actual notice and an opportunity to be heard before the order was entered. § 922(g)(8)(A). Second, the order must prohibit the defendant from either "harassing, stalking, or threatening" his "intimate partner" or his or his partner's child, or "engaging in other conduct that would place [the] partner in reasonable fear of bodily injury" to the partner or child. § 922(g)(8)(B).[10] Third, under

---

[9] *See Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) ("Such a change occurs, for example, when the Supreme Court disavows the mode of analysis on which our precedent relied.").

[10] A defendant's "intimate partner[s]" include his spouse or any former spouse,

No. 22-51019

§ 922(g)(8)(C), the order must either (i) contain a finding that the defendant "represents a credible threat to the physical safety" of his intimate partner or the child, § 922(g)(8)(C)(i), *or* (ii) "by its terms explicitly prohibit[] the use, attempted use, or threatened use of physical force" against those individuals, § 922(g)(8)(C)(ii).

The challenge here involves (8)(C)(ii). Unlike Rahimi's court order, Perez-Gallan's Court Order did not contain an express finding that he is dangerous, but it did prohibit the use or threatened use of force against his domestic partner.[11] The question then is whether *Rahimi 2024*, despite expressly ruling on only (C)(i)'s facial *validity*, is nevertheless a sufficiently unequivocal overruling of *Rahimi 2023* such that *Rahimi 2023*'s holding as to (C)(ii)'s facial *invalidity* no longer binds us. In light of the "two errors" the Supreme Court identified in the panel's decision, *see Rahimi 2024*, 602 U.S. at 701, we hold that the entirety of *Rahimi 2023*'s (g)(8) analysis has been "unequivocally overrule[d]," *Bonvillian*, 19 F.4th at 792 (cleaned up).

First, and most fundamentally, *Rahimi 2024* holds that *Rahimi 2023* misread *Bruen* "to require a 'historical twin' rather than a 'historical analogue.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). The panel's decision declaring § 922(g)(8) unconstitutional flowed from its analysis of the three historical analogues to (g)(8) proffered by the government: "(1) English and American laws (and sundry unadopted proposals to modify the Second Amendment) providing for disarmament of 'dangerous' people, (2) English and American

---

the parent of his child, and anyone with whom he cohabitates or has cohabitated. 18 U.S.C. § 921(a)(32).

[11] The first two § 922(g)(8) requirements—(8)(A) and (B)—were also met. *See* ROA.172–73 (detailing Perez-Gallan's notice of and participation in the state court proceedings); ROA.126 (prohibiting the defendant from, *inter alia*, "harassing" his domestic partner).

No. 22-51019

'going armed' laws, and (3) colonial and early state surety laws." *Rahimi 2023*, 61 F.4th at 456. The panel then discussed why, in its view, each of those historical regulations was not a "relevantly similar" precursor to (g)(8). The crux of the panel's decision was that the "Government's proffered analogues falter under one or both of the metrics articulated in *Bruen* as the baseline for measuring 'relevantly similar' analogues: 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.'" *Id.* at 460 (quoting *Bruen*, 597 U.S. at 29). Therefore, the panel held that "§ 922(g)(8) falls outside the class of firearm regulations countenanced by the Second Amendment." *Id.* at 460–61.

*Rahimi 2024* rejects that analysis. *Rahimi 2023* looked to historical "going armed" and surety laws and concluded that they were "not viable historical analogues for § 922(g)(8)." 61 F.4th at 459. But *Rahimi 2024* holds that, "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." 602 U.S. at 698. *Rahimi 2024* is thus more than "merely illuminating with respect to the case before [the court]." *Martinelli*, 65 F.4th at 234 (citation omitted). It is an unequivocal overruling of the historical analysis employed in *Rahimi 2023*, as the *Rahimi 2023* panel itself explained on remand. *See United States v. Rahimi*, 117 F.4th 331, 333 n.1 (5th Cir. 2024). There, the panel noted that *Rahimi 2024* "modified *Bruen* in at least one relevant respect"—namely, that whereas *Bruen* suggested that surety laws provided no historical analogue for banning a person from having a gun, *Rahimi 2024* "announced that surety laws 'confirm' that covered individuals 'may be disarmed.'" *Id.* (quoting *Rahimi 2024*, 602 U.S. at 698).

Perez-Gallan urges us to read *Rahimi 2024* as only a narrow rebuke of *Rahimi 2023*, given the Supreme Court's assertion that its opinion addresses only § 922(g)(8)(C)(i). As the Court summarizes, "we conclude only this:

No. 22-51019

An individual *found by a court* to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi 2024*, 602 U.S. at 702 (emphasis added). The "found by a court" language refers to (C)(i), not (ii), so the Supreme Court did not conclude whether an individual subject only to an order which "by its terms explicitly prohibits" the use or attempted use of force is also facially constitutional. § 922(g)(8)(C)(ii).

But *Rahimi 2024*'s concluding language cannot save Perez-Gallan's theory from the rest of the Supreme Court's opinion, especially given the second "error[]" the Court identifies in *Rahimi 2023*: the panel's misapplication of the Court's "precedents governing facial challenges." *Rahimi 2024*, 602 U.S. at 701. For a facial challenge to succeed, a challenger must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). But "[r]ather than consider the circumstances in which Section 922(g)(8) was most likely to be constitutional," the Court writes, "the panel instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns." *Rahimi 2024*, 602 U.S. at 701 (citing *Rahimi 2023*, 61 F.4th at 459).

These "two errors" demonstrate why no part of *Rahimi 2023*'s § 922(g)(8) analysis still controls, either under our rule of orderliness or otherwise. *Rahimi 2024*, 602 U.S. at 701. *Rahimi 2023* held that the government could never constitutionally apply (8)(C)(ii) because the panel believed that surety laws "did not impose a comparable burden on the right of armed self-defense . . . as § 922(g)(8)." *Rahimi 2023*, 61 F.4th at 460 (quotation marks and citation omitted). But the Supreme Court has since said that surety laws *can* satisfy *Bruen*'s "comparable burden" test. *See Rahimi 2024*, 602 U.S. at 698–99. So a central pillar of *Rahimi 2023*'s holding—that historical surety laws can never justify applications of (g)(8)—no longer stands.

No. 22-51019

This "fundamentally changes" the legal significance of going-armed and surety laws. *Bonvillian*, 19 F.4th at 792 (alteration omitted). Therefore, because a "subsequent Supreme Court opinion establishes a rule of law inconsistent with" the panel's decision in *Rahimi 2023*, *Bonvillian*, 19 F.4th at 792 (citation omitted), "[t]he law of orderliness mandates that we abandon that prior precedent," *Diaz*, 116 F.4th at 465.[12]

## III.

Having decided that we are not bound by *Rahimi 2023*, we consider whether § 922(g)(8)(C)(ii) facially violates the Second Amendment.[13]

### A.

A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.' That means that to pre-

---

[12] The panel's analysis did not clearly delineate § 922(g)(8)(C)(i) from (ii), instead holding that the entirety of (g)(8) is void. This further weighs against Perez-Gallan's position that *Rahimi 2023* still binds this court. If *Rahimi 2023* discussed why (C)(ii) specifically failed under *Bruen*, it is possible that that decision could have survived as an independent holding left unscathed by *Rahimi 2024*. But because *Rahimi 2023* treats both (C)(i) and (ii) as essentially the same provision, we hold that the entirety of the panel's (g)(8) analysis in *Rahimi 2023* was overruled by *Rahimi 2024*. *See Bonvillian*, 19 F.4th at 792 ("Whether an intervening Supreme Court decision 'merely illuminates' or 'unequivocally overrules' is a judgment call—there is no hard-and-fast requirement, for instance, that a Supreme Court decision explicitly overrule the circuit precedent at issue, or specifically address the precise question of law at issue.").

[13] Our analysis focuses solely on this narrow provision, and our holding does not decide the validity of other provisions of § 922. *See* Richard H. Fallon, Jr., *Facts and Fiction About Facial Challenges*, 99 Cal. L. Rev. 915, 925 (2011) ("[T]he Supreme Court routinely speaks of facial attacks on particular provisions or sections of legislative acts, even when the success of those attacks could leave other aspects of multipart enactments intact.") (noting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329–36 (2010), and *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992) (overruled on other grounds)).

No. 22-51019

vail, the government need only demonstrate that Section 922(g)(8) is constitutional in some of its applications." *Rahimi 2024*, 602 U.S. at 693 (quoting *Salerno*, 481 U.S. at 745). Where "legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023).

To demonstrate that § 922(g)(8)(C)(ii) is facially constitutional—*i.e.*, that it is permissible under the Second Amendment—the government must show that the provision "is consistent with the principles that underpin our regulatory tradition." *Rahimi 2024*, 602 U.S. at 692 (citing *Bruen*, 597 U.S. at 26–31). A court "must ascertain whether [(C)(ii)] is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29). "Why and how" a given gun regulation burdens the right to keep and bear arms are the two key inquiries. *Id.* at 692 (citing *Bruen*, 597 U.S. at 29).

"Why" and "how" a regulation burdens an individual's Second Amendment right are two separate questions. The "why" analysis instructs that "if laws at the Founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category" of firearms regulation. *Id.* The "how" analysis warns that "when a law regulates arms-bearing for a permissible reason . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.* Even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30).

No. 22-51019

We know from *Rahimi 2024* that (C)(i) is facially constitutional because, "[t]aken together," the historical surety and going-armed laws invoked by the government "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." 602 U.S. at 698. But significant to the Court's reasoning is that (C)(i) "applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id.* at 699 (quoting that provision). The question here is whether a prosecution brought under (C)(ii), which does not expressly require a court's finding a "credible threat," could ever be compatible with the nation's history of firearm regulation.

## B.

We are not the first court to consider this question post-*Rahimi 2024*. The Sixth Circuit recently resolved a similar facial challenge to (C)(ii) in the government's favor, holding that the "historic and 'common sense' tradition that allows the disarmament of those who 'pose[] a clear threat of physical violence to another' with respect to 922(g)(8)(C)(i) applies with equal force to Section 922(g)(8)(C)(ii)."[14]

We agree with the Sixth Circuit. While applications of (C)(ii) might present closer calls than do applications of (C)(i), Perez-Gallan's facial challenge still fails because the provision is not inconsistent with the Second Amendment in *all* its applications. *See Rahimi 2024*, 602 U.S. at 693; *Salerno*, 481 U.S. at 745.

Recall that under (C)(ii), an individual is barred from possessing firearms for as long as he is "subject to a court order that . . . by its terms expli-

---

[14] *United States v. Combs*, No. 23-5121, 2024 WL 4512533, at *3 (6th Cir. Oct. 17, 2024) (unpublished) (quoting *Rahimi*, 602 U.S. at 698).

No. 22-51019

citly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."[15]  Recall further that under *Rahimi 2024*, "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."  602 U.S. at 698.  Considered together, this means that if a court order necessarily implies that the defendant poses a clear threat of violence to another, he can be disarmed consistently with the Second Amendment (and, therefore, a facial challenge to (C)(ii) would fail).

At least some court orders covered by (C)(ii) fit that bill.  In *United States v. Emerson*, we evaluated a similar challenge to (C)(ii) by a defendant positing that the provision "should be construed to *require* that the particular predicate court order include an *explicit* finding that the person enjoined posed a credible threat of violence to his spouse or child."  270 F.3d 203, 213 (5th Cir. 2001) (emphases added).  In other words, Emerson averred that unless (C)(ii) requires the same explicit credible threat finding as (C)(i), it cannot satisfy the Second Amendment.  Perez-Gallan advances essentially the same theory.  But we find no fault in *Emerson*'s construction of (C)(ii), which ably demonstrates why prosecutions brought under that provision will often (perhaps even always) accord with the Second Amendment as expounded by *Rahimi 2024*.[16]

---

[15] Also, like (C)(i), (C)(ii) pertains only to court orders issued after providing a defendant with actual notice and an opportunity to participate in a hearing.  18 U.S.C. § 922(g)(8)(A).

[16] We invoke *Emerson* for its persuasive power, not because it is necessarily binding authority.  We recognized in *Emerson*, 270 F.3d at 264, that the Second Amendment guarantees an individual right to possess a firearm but rejected Emerson's constitutional challenge because "the nexus between firearm possession" and "the threat of lawless violence" sufficed to support the deprivation of Emerson's Second Amendment right.  That decision relied on pre-*Bruen* means-end scrutiny, so its Second Amendment holding no longer binds us under the rule of orderliness.  *See Diaz*, 116 F.4th at 465.  But *Emerson*'s

No. 22-51019

As discussed in *Emerson*, when Congress enacted § 922(g)(8), "Congress legislated against the background of the almost universal rule of American law that for a temporary injunction to issue, there must be a *likelihood* that irreparable harm will occur." 270 F.3d at 262 (cleaned up). Under established equitable principles, "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A *presently existing actual threat must be shown.*"[17] We thus concluded that when it enacted § 922(g)(8), Congress "proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless . . . evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined." *Emerson*, 270 F.3d at 262. This means that for at least some (and hopefully all) protective orders, the issuing court was satisfied that the subject posed an actual threat—even if the order did not include an explicit "finding that such person represents a credible threat." § 922(g)(8)(C)(i).

Further, and without deciding any question of state law, we observe that the procedures provided by Kentucky seem to accord with *Emerson*'s understanding of (g)(8). Consider a slightly modified version of the facts of

---

interpretation of § 922(g)(8)(C)(ii) did *not* hinge on "the 'means-end scrutiny' practice that the Supreme Court prohibited in *Bruen*," so it is possible that "the Supreme Court's decision in *Bruen* did not abrogate" that portion of *Emerson*. *United States v. Medina-Cantu*, 113 F.4th 537, 541 (5th Cir. 20024). Regardless, because we agree with *Emerson*'s statutory interpretation, we need not decide the precise extent of its continued vitality.

[17] 9 Wright, Miller & Kane, Fed. Prac. & Proc.: Civil 3d § 2948.1 (emphasis added). *See also* 42 Am. Jur. 2d, Injunctions, § 34 ("To be entitled to an injunction . . . the plaintiff must establish that he or she has sustained or is immediately in danger of sustaining some *certain and direct injury* as a result of the challenged conduct. An injunction will not issue unless there is an imminent threat of illegal action. In other words, the injury or threat of injury must be real and immediate, not conjectural or hypothetical.") (footnotes omitted) (emphasis added).

this case: A defendant's battered domestic partner alleges that the defendant struck her repeatedly. The victim then seeks a restraining order under Kentucky Revised Statutes ("KRS") § 403.740(1) (2024), which provides: "Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order . . . ." The state court, finding that the defendant has committed domestic violence and may do so again, then issues a domestic-violence order "for a period of time fixed by the court, not to exceed three (3) years." KRS § 403.740(4). But the order does not expressly include a finding that the defendant posed "a credible threat to the physical safety" of the victim. § 922(g)(8)(C)(i). Instead, as here, the order says, "having made findings that the Defendant has been arrested for or charged with a crime specified in Chapters 508, 510, 403.740 or 403.750," the court prohibits the defendant "from threatening to commit or committing acts of domestic violence or abuse against the alleged victim or other family or household member."

In such a hypothetical case, the government could not charge the defendant under (C)(i) because the court order itself did not include an explicit finding of dangerousness. So, as here, the government would need to resort to charging the defendant under (C)(ii). But given the state statutory prerequisites of this hypothetical order, which required a court to find by "a preponderance of the evidence that domestic violence and abuse has occurred and may again occur," KRS § 403.740(1), this application of (C)(ii) would be no different from the application of (C)(i) that the Court deemed constitutional in *Rahimi 2024*. In both *Rahimi 2024* and this hypothetical case, (g)(8) would apply "only once a court has found that the defendant represents a credible threat to the physical safety of another" and, "like surety bonds of limited duration," would only "prohibit[] firearm possession so long as the defendant 'is' subject to a restraining order." *Rahimi 2024*, 602

U.S. at 699 (quoting § 922(g)(8)) (cleaned up). Finally, the "penalty—another relevant aspect of the burden—[would] also fit[] within the regulatory tradition" because, "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible." *Id.*

In short, this potential application of (C)(ii) "fits comfortably within" the regulatory tradition identified in *Rahimi 2024*, 602 U.S. at 690. This dooms Perez-Gallan's facial challenge. Because a statute needs just one permissible application to survive a facial challenge, *see id.* at 693, the district court's ruling deeming (C)(ii) facially unconstitutional is legal error.[18]

## C.

Finally, we acknowledge that some potential applications of § 922(g)-(8)(C)(ii) appear problematic, and we do not hold that the statute is (or even likely to be) constitutional in *all* its applications. As one judge noted in *Rahimi 2023*, so-called "mutual" protective orders pose a real concern. *See* 61 F.4th at 466–67 (Ho, J., concurring). Because in "any domestic violence dispute, a judge may see no downside in forbidding *both* parties from harming one another," domestic-violence proceedings "have often led to the issuance of unmerited mutual restraining orders, namely in situations where one party is the abuser and the other party is a victim." *Id.* at 466 (Ho, J., concurring) (quoting Jacquie Andreano, *The Disproportionate Effect of Mutual Restraining Orders on Same-Sex Domestic Violence Victims*, 108 Cal. L. Rev. 1047, 1054 (2020)) (emphasis removed). If these court orders also meet the terms of

---

[18] This discussion should not be interpreted to prejudge any as-applied challenge that Perez-Gallan might pursue. It is possible that the foregoing analysis supporting (C)(ii)'s *facial* validity will not accord with the precise circumstances and state statutory provisions giving rise to Perez-Gallan's Court Order.

No. 22-51019

§§ 922(g)(8)(A) and (B), an abused woman could lose her right to possess a gun just because her violent domestic partner is awarded a mutual protective order against her, even if there are no indications that the women herself is dangerous. The resourceful concurrence thus concluded that because in "any domestic violence dispute, a judge may see no downside in forbidding *both* parties from harming one another," "§ 922(g)(8) effectively disarms *victims* of domestic violence." *Id.* at 466 (Ho, J., concurring).

This is indeed "profoundly perverse," *id.*, but when considering a facial challenge, a court's "task is to seek harmony, not to manufacture conflict." *Rahimi 2024*, 602 U.S. at 701 (quoting *Hansen*, 599 U.S. at 781).[19] The fact that (C)(ii) may have *some* perverse and possibly unconstitutional applications does not mean that *all* its possible applications violate the Second Amendment. The district court's failure to grapple with this point highlights its well-intended error.[20] As in *Rahimi 2023*, "[r]ather than consider the circumstances in which Section 922(g)(8) was most likely to be constitutional, the [district court] instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns." *Rahimi 2024*, 602 U.S. at 701. That error, if repeated on appeal, would leave this "panel slaying a straw man." *Id.*

\* \* \* \* \*

Because 18 U.S.C. § 922(g)(8)(C)(ii) is not unconstitutional in all its applications, Perez-Gallan's facial challenge fails. The judgment dismissing the indictment is REVERSED and REMANDED for the district court to

---

[19] *See also Rahimi 2024*, 602 U.S. at 701 n.2 ("Many of the potential faults that the Fifth Circuit identifies in Section 922(g)(8) appear to sound in due process rather than the Second Amendment.").

[20] *See Perez-Gallan*, 640 F. Supp. 3d at 714 (detailing the outlier experience of David Letterman).

No. 22-51019

consider Perez-Gallan's as-applied challenge in the first instance. We express no view as to which matters the court may address and decide on remand, and we give no hint as to what decisions it should make.



# United States Court of Appeals
# for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Jan 22, 2025

Attest: *Lyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2024

Lyle W. Cayce
Clerk

No. 22-51019

UNITED STATES OF AMERICA,

*Plaintiff—Appellant,*

*versus*

LITSSON ANTONIO PEREZ-GALLAN,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-427-1

---

ON REMAND FROM THE UNITED STATES
SUPREME COURT

Before SMITH, STEWART, and DUNCAN, *Circuit Judges.*

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED, and the cause is REMANDED to the

District Court for further proceedings in accordance with the opinion of this Court.

      The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.