# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § | |
| v. | | P:22-CR-00427-DC |
| LITSSON ANTONIO PEREZ-GALLAN | | |

## ORDER GRANTING MOTION TO DISMISS INDICTMENT

After years of pinballing[1] its way through the courts on a facial challenge, Perez-Gallan returns with his as-applied constitutional challenge to § 922(g)(8)(C)(ii) and concerns about the adequacy of the Kentucky proceeding that triggered the statute. Few courts—if any—have confronted this constitutional issue post-*United States v. Rahimi*,[2] so the task lands in largely undeveloped terrain.

But the Court need not reach the constitutional merits. Glaringly absent are statutory elements in § 922(g)(8)(A), which mandates the underlying court order have issued after a hearing, notice, and the opportunity to be heard. Though the Government contends this issue is foreclosed by the Fifth Circuit's 2024 opinion, the Court resolves that statement as dictum. Consequently, the Court finds the indictment insufficient to carry to trial. The Motion[3] is therefore **GRANTED**.

---

[1] *United States v. Perez-Gallan*, 640 F. Supp. 3d 697, 698 (W.D. Tex. 2022) (hereafter "*Perez-Gallan 2022*"), *aff'd*, No. 22-51019, 2023 WL 4932111 (5th Cir. Aug. 2, 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2707, 219 L. Ed. 2d 1313 (2024), and *rev'd and remanded*, 125 F.4th 204 (5th Cir. 2024).
[2] 602 U.S. 680 (2024).
[3] Doc. 81.

1

I.  **Factual Background**

Litsson Antonio Perez-Gallan was hauling freight in an 18-wheeler near the U.S.–Mexico border when he arrived at a border patrol checkpoint in Presidio, Texas. Before being directed to secondary inspection, agents noticed suspicious behavior. Asked point-blank if he was armed, he said yes and gave permission to search his belongings and vehicle. Inside his backpack, they found a handgun that had been reported as stolen. He told agents the pistol was given to him by a friend for protection.[4]

They also found paperwork. Among the documents was a Kentucky court order tucked in his wallet setting conditions of pretrial release following a May 2022 arrest for misdemeanor domestic violence.[5] That court order prohibited him from harassing or committing acts of violence against his wife, who remained in Kentucky. It was a form document, with checkboxes corresponding to various statutory conditions, and it bore no express finding that Perez-Gallan posed a specific or credible threat. It also told him that he could not carry a weapon.

---

[4] Perez-Gallan had allegedly received threats in the past, and he was traveling alone in a high-risk area while transporting valuable cargo. The statement was made after being read his *Miranda* rights advisement and his subsequent waiver of those rights.

[5] The government later identified a second document—a family court restraining order. But, as this Court has previously held, that order cannot support the allegations the government makes in the indictment because the government "acknowledges it has no proof [Perez-Gallan] had actual notice, the opportunity to participate, or was even present when the Restraining Order was issued." Doc. 55 at 3. These orders sprung from an instance in which Perez-Gallan "struck [his partner] in the face while she was holding their baby, and, after she put the baby down, he dragged her to the bathroom, struck her in the face again, and began hitting her in the ribs." *United States v. Perez-Gallan,* 125 F.4th 204, 207 (5th Cir. 2024) (hereafter "*Perez-Gallan 2024*").

That order was entered at his initial appearance, which occurred within hours of his arrest. It was issued by a judge along with his conditions of release. He appeared without counsel but was provided a Spanish interpreter. The record does not reflect that he received notice of the proceeding or its subject matter, including that his firearm rights could be affected.

Shortly after his Texas arrest, Perez-Gallan was indicted under 18 U.S.C. § 922(g)(8) for unlawful possession of a firearm while subject to a domestic violence-related court order.

## II. Procedural History

Shortly after *Bruen* reset the constitutional playing field, Perez-Gallan moved to dismiss his indictment.[6] He argued that the Government's[7] proffered analogues—going-armed and surety laws—did not match. Unsatisfied, this Court ordered supplemental briefing. And when that briefing fell short, this Court granted the motion, dismissing the indictment.[8] The Fifth Circuit affirmed.[9]

The Supreme Court granted *certiorari* and returned the case to the Fifth Circuit to reconsider in light of the Court's recent decision in *Rahimi*.[10] On remand, the Fifth Circuit considered only whether § 922(g)(8)(C)(ii)—a separate prong of the statute from the one considered in *Rahimi*—was facially unconstitutional. It answered no.[11] The case was then returned to this Court to consider, in the first instance, the as-applied challenge and any

---

[6] Doc. 30.
[7] The Court uses "Government" (capitalized) to refer to the prosecution in this case, and "government" (lowercase) to refer to it outside this case.
[8] Doc. 55.
[9] *United States v. Perez-Gallan*, No. 22-51019, 2023 WL 4932111, at *1 (5th Cir. Aug. 2, 2023) (hereafter "*Perez-Gallan 2023*"), *cert. granted, judgment vacated*, 144 S. Ct. 2707 (2024).
[10] *United States v. Perez-Gallan*, 144 S. Ct. 2707 (2024).
[11] *See Perez-Gallan 2024*, 125 F.4th at 204.

other outstanding issues. The Fifth Circuit "express[ed] no view as to which matters the court may address and decide on remand, and . . . g[a]ve no hint as to what decisions [this Court] should make."[12]

Perez-Gallan then filed his new motion to dismiss, arguing, among other things, that (C)(ii) is unconstitutional as applied to him and that the underlying court order does not comply with § 922(g)(8).[13]

### III.   Legal Standard

This motion is filed under Rule 12(b) of the Federal Rules of Criminal Procedure, which gives defendants an early opportunity to raise any defense, objection, or request that a court can decide without getting into the factual weeds of the case. The purpose is practical as well as principled: when a dispute can be disposed of due to a purely legal question, there is no reason to put the parties—or the system—through the time and expense of preparation for trial.

*United States v. Connelly*[14] is a perfect example. There, the government charged Connelly with "knowingly dispos[ing] of and provid[ing] access to firearms" to her husband—alleging she did so while knowing, or at least having reason to believe, that he was unlawfully using controlled substances.[15] Rather than wait for the jury to weigh in, the district court dismissed the charge on a pretrial motion because the key issue—what it means to "dispose" of a firearm—was, at its core, a legal question.[16]

---

[12] *Id.* at 217.
[13] Doc. 81.
[14] Case No. 3:22-cr-229-KC-2, Doc. 44, at 2–3 (W.D. Tex. Aug. 10, 2022).
[15] *Id.*
[16] *Id.*, Doc. 150, at 4.

Thus, so long as courts do not step into the jury's shoes as factfinder, courts may resolve before trial challenges to the sufficiency of an indictment, even if it involves some application of law to fact.[17] The Fifth Circuit affirmed that view on appeal, noting in its review that the Constitution does not allow a conviction where the government cannot, when viewing the evidence in the light most favorable to the government, meet its burden.[18]

Just as in *Connelly*, the motion here invites the Court to assume the Government's factual allegations are true and then ask several questions. And as in *Connelly*, this Court finds the Government cannot meet its burden.

## IV. Discussion

Section 922(g)(8) permits disarmament only when the underlying court order meets three statutory conditions. The first is set out in subsection (A): the order must issue "after a *hearing* of which the person received actual *notice*, and at which the person had an *opportunity to participate*."[19]

Perez-Gallan argues that these protections were not afforded him. The Government disagrees and contends that Fifth Circuit precedent forecloses the challenge. Because that threshold foreclosure question determines whether this Court may reach the merits, the Court begins with it. Only if the claim is not foreclosed may the Court address whether the notice and opportunity-to-participate requirements were satisfied here.

### A. Dictum

---

[17] *Id.* at 5.
[18] *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024).
[19] 18 U.S.C. § 922(g)(8)(A) (emphasis added).

The Court first considers whether the Fifth Circuit's fleeting discussion of § 922(g)(8)(A)'s elements forecloses this Court's review. A prior appellate decision binds this Court unless the relevant statement is dictum or has been abrogated by intervening Supreme Court authority. A statement is dictum if it "could have been deleted without seriously impairing the analytical foundations of the holding" and "being peripheral, may not have received the full and careful consideration of the court that uttered it."[20] Conversely, a statement is not dictum if it is necessary to the result or constitutes an explanation of law.[21]

The relevant statement stems from *Perez-Gallan 2024*. There, the Fifth Circuit focused on the core issues presented in this Court's previous order: the facial challenge. Though this Court discussed very briefly the predicate elements in § 922(g)(8)(A), it did not develop them. The original motion to dismiss raised only two issues, the facial and as-applied challenges.[22] Perez-Gallan did not press any defects regarding notice or hearing.

Because the issue presented and briefed was the facial challenge, the Fifth Circuit proceeded on the assumption that the statutory predicates were satisfied and had no need to decide them. Its brief acknowledgment that the record reflected notice and participation thus functioned as a premise for reaching the constitutional question—not as a holding on § 922(g)(8)(A)'s satisfaction in this prosecution. Although the presence of those elements is

---

[20] *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)); *see also Obiter dictum,* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential").
[21] *Bray*, 372 F.3d at 721.
[22] Doc. 31.

necessary in any § 922(g)(8) prosecution, the Fifth Circuit had no reason to examine them beyond acknowledging their existence in the record.

The court addressed these elements only once in a footnote, stating: "The first two § 922(g)(8) requirements—(8)(A) and (B)—were also met," followed by citations to the record excerpts for the Government's district-court briefing and the state court order itself.[23] The court offered no analysis and identified no governing rule about what § 922(g)(8)(A) requires. It simply noted that the record contained evidence that Perez-Gallan had notice and participated in the Kentucky proceeding.[24]

That is the hallmark of dictum. The panel did not analyze whether notice given only hours after arrest satisfies § 922(g)(8)(A). It did not consider whether the opportunity to participate was meaningful, and it did not explore the due-process implications of the timing or the defendant's inability to obtain counsel. It "merely assumed, without holding," that subsection (A) was satisfied.[25] In other words, it did not devote "the full and careful consideration of the court."[26]

---

[23] *Id.* at 211 n.11.
[24] Part of the Government's argument in this briefing is that Perez-Gallan received notice because he was notified "[a]t the hearing . . . about the criminal charges against him." *See Perez-Gallan 2022*, No. 4:22-CR-427, Doc. 46 (referred to in *Perez-Gallan 2024* as "ROA.172"). But this Court is not convinced that such notice satisfies § 922(g)(8)(A)'s due process requirements. In procedural due process contexts, notice ordinarily must precede the hearing so that the respondent has a meaningful opportunity to prepare and respond. *See, e.g., United States v. Spruill*, 292 F.3d 207, 216 (5th Cir. 2002) (pre-*Bruen* § 922(g)(8) case suggesting notice must inform defendant before "time or place for hearing having previously been set"). This is just one of several concerns the Court has about whether due process (and the elements of § 922(g)(8)(A)) were satisfied. Moreover, because these notice and hearing requirements form part of the statute's elements, their ultimate resolution is a question for the jury.
[25] *See Bray*, 372 F.3d at 721.
[26] *Id.* (quoting *Gochicoa*, 238 F.3d at 286 n.11).

7

Moreover, the panel itself signaled that its observations about the underlying order were not meant to constrain further proceedings. It expressly stated that it "express[es] no view as to which matters the court may address and decide on remand" in the as-applied challenge.[27] That is not the language of a court intending to bind district courts on § 922(g)(8)(A)'s factual predicates.

For these reasons, the Fifth Circuit's footnote is dictum and does not foreclose this Court's review of whether § 922(g)(8)(A)'s notice and participation requirements were met.

### B.  Section 922(g)(8)(A)'s Elements

Because this issue is not foreclosed from the Court's consideration, the Court next addresses whether "tak[ing] all of the Government's factual allegations as true for purposes of" determining "whether an offense has been adequately charged here" there is enough evidence that the elements of § 922(g)(8)(A) were met—notice, hearing, and opportunity to participate.[28] Because the Government concedes that it has no additional evidence beyond what is contained in the Motion,[29] this Court does not run the risk of usurping the jury's function as factfinder.[30]

---

[27] *Perez-Gallan 2024*, 125 F.4th at 217.
[28] *Connelly*, Case No. 3:22-CR-229-KC-2, Doc. 150 at 5.
[29] Hearing Transcript 31 ¶ 9-11 ("And Your Honor, what we have is what we have, as far as the record goes, as far as the orders.").
[30] *United States v. Connelly*, Case No. 3:22-cr-229-KC-2, Doc. 150 at 5 (W.D. Tex. Nov. 1, 2024) (Cardone, J.) (citing *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024) (finding that a district court may handle "challenges to the sufficiency of an indictment . . . pretrial . . . even when they require some application of law to facts, so long as they do not require the Court to usurp the jury's function by resolving factual disputes.").

Though the standards for these elements in the § 922(g)(8) context have not been concretely established, one case provides significant guidance: *United States v. Spruill*.[31] There, the Fifth Circuit explained that for "actual notice" to occur, the hearing must be set "for a particular time and place."[32] For that "hearing" to occur, it must be real and actually occur before a judge "prepared to listen to both sides of the dispute and to *consider deeply,* reflect broadly, and decide impartially."[33] The standard for the opportunity to participate is not provided.

*Spruill* provides a good foundation, but it leaves many questions unanswered. It tells us what must happen—notice of a set hearing—but not exactly how. It does not specify how far in advance notice must be given, whether written notice is required, or whether oral notice from a jailer would suffice. Nor does it clarify whether the opportunity to participate must include representation by counsel. In *Spruill*, no hearing was ever set or held. And the respondent was illiterate and unrepresented, so the lack of notice and opportunity was obvious.[34] This case, by contrast, involves a hearing that did occur—raising the harder questions of whether the hearing was meaningful and notice was sufficient. Those questions, left open by *Spruill,* frame the inquiry here.

---

[31] 292 F.3d 207 (5th Cir. 2002).
[32] *Id.* at 220.
[33] *Id.* (internal citation omitted).
[34] *Id.* at 218 n.14.

### 1. Hearing

Though neither the statute itself nor *Spruill* define the word "hearing," the record makes clear that *some* form of hearing occurred before the order was issued.[35] Perez-Gallan was brought before a judge for a bond hearing around 9:00 a.m. in "CRIMINAL COURTROOM 304"—less than twelve hours after his arrest around 7:08 p.m. the prior evening.[36] He signed the order at that time. The question then is not whether a hearing occurred but whether that hearing satisfied § 922(g)(8)(A)'s requirements of actual notice and a meaningful opportunity to participate.

### 2. Notice

Though *Spruill* holds that notice must communicate a "particular time and place,"[37] it says nothing of how much advance notice is enough or whether written notice is required. Different due-process contexts provide rough guidance, though the parties do not engage with that case law. Prison disciplinary proceedings, for example, require written notice at least twenty-four hours before the hearing.[38] Utility terminations require the same.[39] If twenty-four hours of written notice is considered the minimum in those comparatively lower-stakes contexts, it would be seemingly anomalous to expect less where the

---

[35] Admittedly, the Court is unsure how it is supposed to determine, absent a transcript, whether a hearing occurred before a judge "prepared to listen to both sides of the dispute and to *consider deeply,* reflect broadly, and decide impartially." *Id.* at 220 (internal citation omitted). However, it will assume so under the presumption of regularity. This case's most important defect, however, is notice.

[36] Docs. 84-1, 84-4, 84-5.

[37] 292 F.3d at 220.

[38] *Jon v. Stephens*, No. CV H-14-3018, 2015 WL 13681854, at *3 (S.D. Tex. Aug. 12, 2015), *report and recommendation adopted*, No. 4:14-CV-03018, 2018 WL 671273 (S.D. Tex. Jan. 29, 2018).

[39] *Bradford v. Edelstein*, 467 F. Supp. 1361, 1365 (S.D. Tex. 1979). These examples, of course, are from starkly different contexts.

consequence is the loss, albeit temporary, of a core constitutional right.[40] A hearing without notice has "little reality or worth unless one is informed that the matter is pending."[41]

The record here confirms that a hearing occurred *less than twelve hours* after Perez-Gallan's arrest, at which the judge issued the order. The record contains no evidence that he was formally or informally notified in advance via *any method* that the bond hearing would occur, much less that the hearing would involve conditions restricting contact with the alleged victim or prohibiting violent conduct.

So even though the Court might assume that Perez-Gallan *could have* received during the short overnight window some sort of oral advisements or paperwork delivered while he remained in custody that notified him of the fast-approaching hearing, given the absence of *any* evidence to that effect, the Court cannot conclude on this record that he received the "actual notice" that § 922(g)(8)(A), read in light of *Spruill*, requires.[42]

### 3. Opportunity to be Heard

Which brings the Court to the opportunity to be heard. As discussed above, neither *Spruill* nor the statute provides a real standard for this element. Though other courts have suggested that the right to be heard entails a "fair and meaningful opportunity to *present his*

---

[40] *See Spruill*, 292 F.3d at 220 (rejecting the government's broad, administrative-law conception of a "hearing" because § 922(g)(8) involves a judicial proceeding that requires a narrower, more robust definition).
[41] *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).
[42] While an arrestee may generally know he will eventually be brought before a magistrate, that general expectation cannot itself satisfy § 922(g)(8)(A)'s actual notice requirement. Thus, the Government's argument that arrest alone was sufficient for notice, supported by no case law, is rejected.

*defense*,"[43] likely with counsel, none of those requirements have been adopted by the Fifth Circuit.[44] Even without that heightened standard, however, any opportunity afforded here seems nominal at best.

Though at least provided with a Spanish interpreter, Perez-Gallan was hauled before a judge within hours of arrest. No evidence suggests he received notice of the proceeding or its subject matter, and he was unrepresented by counsel.[45] And nothing in the record suggests that he had meaningful time to gather information, consider his options, or respond to the allegations that would form the basis of a firearm-restrictive order.

In short, even under the most generous reading of *Spruill*, the Court harbors substantial doubt that Perez-Gallan received a proper opportunity to participate. But because this Court can dismiss the indictment solely on lack of notice, it declines to determine whether this element was met.

### 4. Presumption of Regularity

The Court next considers the Government's argument that this Court should presume, under the presumption of regularity, that the Kentucky court complied with

---

[43] *Id.* at 219 n.15 (citing *United States v. Wilson*, 159 F.3d 280, 292 (7th Cir. 1998)) (emphasis added).

[44] And while *Spruill* declined to explicitly require representation, this case is a far cry from other contexts in which courts have dismissed concerns over lack of counsel. For example, in *United States v. Wilson*, discussed in *Spruill,* the Seventh Circuit rejected a § 922(g)(8) challenge in part because the defendant there demonstrated an ability to advocate for himself. 292 F.3d at 218 n.15. The defendant—though pro se—had previously persuaded another judge to vacate a default entered and recuse himself. *Spruill*, 292 F.3d at 219 n.15 (discussing *Wilson*, 159 F.3d at 290).
He had thus demonstrated he was "competent to lodge an objection to the protective order, and he was given the ability to do so." *Id.* (discussing *Wilson*, 159 F.3d at 290).
This case is markedly different. No evidence suggests that Perez-Gallan was competent to lodge any complaint against the Kentucky judge.

[45] Doc. 81 at 5.

12

safeguards of § 922(g)(8). The presumption of regularity instructs that judgments entered by courts are "not to be lightly set aside on collateral attack."[46] So when the governing state law itself requires certain procedures, courts may rely on that presumption to conclude that those procedures were followed.

That was the case in *United States v. Emerson*.[47] There, the Texas statute at issue explicitly required a hearing, notice, and finding of necessity before a restraining order could issue.[48] Relying on that statutory framework, the Fifth Circuit found little difficulty concluding that the Texas framework satisfied the due-process requirements of § 922(g)(8).[49] And because Texas law mandated those safeguards, the presumption of regularity could reasonably fill any gaps in the record.

This Kentucky law is different. Although Kentucky has statutory schemes, like KRS § 403.740, that explicitly require notice, a hearing, and an opportunity to be heard before a protective order may issue, KRS § 431.064 contains no such requirements. That statute, governing conditions of release, does not explicitly require any of the procedural safeguards from § 922(g)(8).[50] It authorizes courts to impose release conditions "to ensure the appearance of the defendant and the safety of the public," but it mandates neither advance

---

[46] *Huffman v. Beto*, 260 F. Supp. 63, 66 (S.D. Tex. 1966); *see United States v. Morgan*, 346 U.S. 502, 512 (1954); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974).
[47] 270 F.3d 203, 263 (5th Cir. 2001), *abrogated by United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024)
[48] *Id.* (citing Texas Family Code § 6.502, which requires "notice and a hearing" and a finding of necessity before the order may issue).
[49] *Id.* at 262 (internal citation omitted) (noting that it was "clear" Texas law satisfied those requirements).
[50] Ky. Rev. Stat. (KRS) § 431.064. Section 431.064 governs "pretrial release of a person who is arrested for a violation of KRS Chapter 508 or 510." KRS § 431.064. The underlying offense for which Perez-Gallan was arrested was assault in the fourth degree—governed by KRS § 508.030. Doc. 84-6; KRS § 508.030.

notice nor an adversarial hearing before those conditions are imposed.[51] In fact, it provides that "[i]f conditions of release are imposed without a hearing, the arrested or charged person may request a prompt hearing before the court to review the conditions."[52] Thus, a hearing is not even a precondition; it may in some cases follow only upon the defendant's request. Compounding the issue, the statute's text includes no reference to "notice" or "opportunity to be heard."

So because Kentucky law does not itself require the procedural safeguards that § 922(g)(8)(A) demands, this Court cannot presume that they occurred here.

## V. Conclusion

In the end, this case turns on notice. Because the Government admits that it has no further evidence than what it submits with this Motion, the Court can safely say that the offense has not "been adequately charged here" without usurping the job of the jury.[53] Given that, the Court need not reach Perez-Gallan's other arguments.

The Motion is **GRANTED**.

It is so **ORDERED**.

SIGNED this 27th day of November, 2025.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[51] KRS § 431.064.
[52] KRS § 431.064(5).
[53] *Connelly*, No. 3:22-CR-229-KC-2, Doc. 150 at 5.